

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 02, 2024.**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELECTRO SALES & SERVICE, INC. | § | CASE NO. 21-50546-MMP |
| | § | |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| | § | |
| MR. W FIREWORKS, INC. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADVERSARY NO. 22-05045-MMP |
| | § | |
| | § | |
| 2317 PINN ROAD INVESTMENT INC., | § | |
| SHEBILO MANAGEMENT, INC. & | § | |
| ELECTRO SALES & SERVICE, INC. | § | |
| | § | |
| DEFENDANTS. | § | |

**ORDER AND OPINION ON MOTIONS FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Before the Court are *Plaintiff Mr. W Fireworks, Inc.'s Motion for Summary Judgment* (ECF No. 202) and *Defendant 2317 Pinn Road Investment Inc and Shebilo Management Inc Motion for Summary Judgment* (ECF No. 204). The Court will grant summary judgment to Pinn Road Investments, Inc. ("**Pinn Road**").

**II.  JURISDICTION AND VENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1408 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (M) and (N). This Opinion serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

**III.  FACTUAL BACKGROUND**

Mr. W Fireworks, Inc. ("**Mr. W**") and Pinn Road both assert ownership rights in real property located at 2750 S. Loop 1604, San Antonio, Texas ("**Property**"). Both have been entangled in the financial machinations of Electro Sales & Service, Inc. ("**Electro**") and its principal Salim Merchant ("**Merchant**"). The Property belonged to Electro on its May 3, 2021 petition date ("**Petition Date**").

Three months after the Petition Date, Electro entered into a one-year lease ("**Lease**") with Mr. W. The Lease provided Mr. W nine, one-year renewal options (a potential 10-year lease) and prevented Electro from leasing or selling to anyone in the fireworks business for ten years following the termination of the Lease. Additionally, Mr. W was given a right of first refusal on any sale of the Property. Electro never disclosed the Lease to the Court or its creditors. Nor did it seek the Court's approval of the Lease or its related right of first refusal.

2

Eight months after the Petition Date, Electro filed its first plan of reorganization (ECF No. 38) and disclosure statement (ECF No. 39), and a month after that, its amended plan (ECF No. 46), amended disclosure statements (ECF Nos. 44 and 45) and second amended disclosure statement (ECF No. 53). A month after that, Electro filed its second amended plan (ECF No. 61) ("**Second Amended Plan**"). Electro's plan, amended plan and Second Amended Plan all contemplated selling the Property within 180 days of plan confirmation, but none of Electro's plan or disclosure documents disclosed the existence of the Lease, the right of first refusal in the Lease, or the contract to sell the Property to Mr. W ("**Mr. W Sale Contract**"). The Second Amended Plan falsely stated that Electro's only unexpired lease related to 3539 Eisenhauer Road, not the Property.

A month before confirming Electro's Second Amended Plan and nine months after signing the Lease, Merchant, on behalf of Electro, signed the Mr. W Sale Contract, agreeing to sell the Property to Mr. W for $250,000 ("**Mr. W Sale**"). Neither Merchant nor Electro ever sought or obtained Court permission to execute the Mr. W Sale Contract, which scheduled a sale closing on June 1, 2022, a little more than a month after the Court confirmed Electro's Second Amended Plan. Electro never disclosed the proposed sale to the Court or its creditors or nor did it seek Court approval for the Mr. W Sale after it signed the Mr. W Sale Contract without Court permission. Mr. W asserts that prior to being contacted by Pinn Road, it had no notice or knowledge of Electro's bankruptcy case.

Shortly after entering the Mr. W Sale Contract, Mr. W hired Alamo Title Company ("**Alamo**") to provide title insurance and escrow services for the Property. On March 16, 2022, a representative of Alamo emailed the title commitment and tax certificates for the Property to,

3

among others, Mr. W's vice president, Julio Martinez ("**Martinez**") and Mr. W's attorney, Aaron Barton ("**Barton**"). The tax certificate emailed to Martinez and Barton contained this notice:

> "Important Bankruptcy Notice: This certificate reflects bankruptcy information on one or more accounts. The payoff reflected on this certificate may include special bankruptcy penalties and interest, which accrues at a lower rate. If payment is made by any party other than the Bankruptcy Trustee, full P&I may be added at a later date." Def.'s Ex. 11.

The words "Bankruptcy Case #BANKRUPTCY Filed" also appear in conspicuous, red font several times in the tax certificate. Despite these notices on the tax certificate, Alamo's updated title commitments did not mention Electro's bankruptcy case, and no representative of Mr. W appears to have acted in response to the notices. Alamo, however, was on notice of Electro's bankruptcy case, and was prepared to act on that information before closing of the Mr. W Sale Contract. Joe Gimblet, Alamo's escrow officer, stated in his deposition:

> Gimblet: I mean, I was aware of [Electro's bankruptcy case]. But I just—I wasn't—I wasn't looking at it. I wasn't trying to resolve it. I wasn't trying—I wasn't in the middle of the bankruptcy, I was just aware of it, and my assistant is fully qualified to take care of it as well.
> 
> […]
> 
> Q: … And you said you weren't aware of the bankruptcy, but you were aware of it before June 1st of 2022?
> 
> Gimblet: Before—I said right before the termination. Yes.
> 
> Q: How did you become aware of it?
> 
> […]
> 
> Gimblet: Through my emails with the—tax certificate has it, and we were going to address it. But again, this file never closed. We never had to address the bankruptcy.
> 
> Def.'s Ex. 27, at 78-79.

One day before the scheduled Mr. W Sale closing, Electro, through Merchant, reneged on Electro's deal with Mr. W, claiming to have received a better offer. About a week later, Electro and Pinn Road entered a sales contract for the sale of the Property for $300,000. The Pinn Road

4

sale closed about a month later, and a portion of the Pinn Road sale proceeds were used to pay off the only encumbrance on the Property.

Soon after, Mr. W filed a complaint ("**Complaint**"), seeking revocation of Plan confirmation under 11 U.S.C. § 1144,[1] specific performance of the Mr. W Sale Contract, and to quiet title. Pinn Road's answer to the Complaint ("**Answer**") raised two affirmative defenses: first, that Pinn Road was a bona fide purchaser ("**BFP**") entitled to take title to the Property free and clear of Mr. W's interests, and second, that both the Lease and Mr. W Sale Contract were void because they were entered without Court approval, which was required because they were not transactions in the ordinary course of Electro's business under § 363(c)(1). Duelling motions for summary judgment followed.

IV. ANALYSIS

    a. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).

    b. THE PARTIES' ARGUMENTS

Both motions for summary judgment turn on the effectiveness of the Lease and, more critically, the Mr. W Sale Contract. The effectiveness of the Mr. W Sale Contract is foundational to Mr. W's other claims: the claim that Electro breached the Mr. W Sale Contract assumes an effective contract; the claims to quiet title and for injunctive relief against Pinn Road similarly assume Mr. W has an equitable interest in the Property under an effective contract.

Mr. W argues that both the Lease and Mr. W Sale Contract were executed within the ordinary course of Electro's business and thus did not require court approval. Alternatively, Mr.

---

[1] All statutory citations and references are to title 11 of the United States Code, unless otherwise noted.

W argues that even if the Lease and Mr. W Sale Contract required court approval, each was a voidable (not void) transfer of a property interest to Mr. W and may only be set aside under § 549(a) unless the transfers are protected from avoidance by § 549(c)'s exception for bona fide purchasers (for which Mr. W asserts it qualifies).

Pinn Road replies that the Lease and Mr. W Sale Contract are both void (not voidable) because they were executed outside the ordinary course of Electro's business and therefore required court approval, which Electro didn't have, to be effective. § 363(c)(1).

Courts are divided on whether post-petition transactions in violation of § 363(c)(1) (outside the ordinary course) are void or voidable. A line of cases in the Fifth Circuit holds that transactions made outside the ordinary course and without court permission are *void* and considered to have never happened ("**Majority View**").[2] *E.g.*, ***In re Patriot Place, Ltd***, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013). A competing line of cases, however, holds that such transactions are instead *voidable*, because treating them as *void* arguably makes § 549(a)(2)(B) redundant ("the trustee may *avoid* a transfer of property of the estate…that is not authorized under this title or by the court") ("**Minority View**"). *E.g.*, ***Zeman v. Humphreys***, 2011 Bankr. LEXIS 3791, *12 (Bankr. W.D. Tex. 2011).

This Court need not take a position on whether the Lease and Mr. W Sale Contract were void or voidable, because the result is the same under both views of the law. Because the Court finds the Lease and Mr. W Sale Contract were entered outside the ordinary course of Electro's

---

[2] Electro's failure to obtain Court permission to transfer real property interests (via Lease or the Mr. W Sale Contract) outside the ordinary course of business under § 363(c)(1) arguably deprived Electro of the authority to transfer property interests of the estate, such that there never was an equitable transfer of real property from Electro to Mr. W. Majority View case law treats such transfers as void, but that characterization is simply the other side of the same coin. A debtor-in-possession's lack of authority to transfer estate property without Court permission arguably prevents any unapproved transfer of a property interest, which is effectively the same as a void transfer.

6

business and Mr. W. does not qualify for § 549(c)'s exception,[3] the Court finds it appropriate to grant summary judgment for Pinn Road.

Under the Majority View, Electro never transferred a property interest to Mr. W via the Lease or Mr. W Sale Contract. Under the Minority View, Electro transferred a real property interest to Mr. W, but that interest can be avoided under § 549(a). Mr. W's argument that any interest it purportedly has in the Property may not be avoided under § 549(c) fails if the Lease and Mr. W Sale Contract are void, and § 549(c) never comes into play because there was no transfer of a real property interest. If, instead, those transactions are voidable, the transaction is not protected by § 549(c) and Electro's transfer can be avoided because Mr. W had constructive or imputed notice of Electro's bankruptcy case. Again, the effective result is the same. This Court will thus grant Pinn Road's Motion for Summary Judgment.

    c. **THE LEASE AND SALE TRANSACTIONS WERE NOT CONDUCTED IN THE ORDINARY COURSE OF BUSINESS.**

It is undisputed that Electro failed to seek this Court's permission before entering the Lease and Mr. W Sale Contract. A chapter 11 debtor-in-possession "may enter into transactions, including the sale or lease of property of the estate, *in the ordinary course of business*, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." § 363(c)(1) (emphasis added).

Courts use a two-part test to determine whether a transaction was within the ordinary course of business: (i) the "vertical" test, which asks whether the transaction fell within the scope of a debtor's pre-petition business practices (considering whether the transaction would fall within a hypothetical creditor's expectations), and (ii) the "horizontal" test, which asks whether the

---

[3] The Court notes that § 549(c) considerations are strictly hypothetical here since no § 549(a) avoidance action has been initiated.

7

transaction was of the sort commonly undertaken by other companies in a debtor's industry. *Patriot Place*, 486 B.R. 773 at 793.

Pinn Road argues that neither the Lease nor the Mr. W Sale Contract was within the ordinary course of Electro's business. The Court agrees and will grant summary judgment for Pinn Road on this issue.

### i. THE LEASE TRANSACTION

#### 1. VERTICAL TEST – THE LEASE TRANSACTION

The Lease transaction fails the vertical test. Although Electro was ostensibly in the business of leasing commercial property, Mr. W presented no evidence of Electro's prior business practices. The Court lacks evidence of the similarities between the Lease and other commercial property leases Electro may have signed.

Two Lease terms give the Court pause. First, the Lease duration appears unusually high given its purpose (to allow seasonal placement of a fireworks stand). Though the Lease was signed for an initial term of one year, it gave Mr. W nine consecutive options to extend the term by an extra year, for a potential total lease duration of ten years. For a Debtor with just two commercial properties, a Lease that binds one of those properties for up to ten years (and encumbers it for ten years after that) is not the sort of "every-day, run of the mill [transaction] … which would normally be regarded as part of the debtor's daily business operations" for which § 363(c)(1) was designed. *In re Baker*, 118 B.R. 24, 28 (Bankr. S.D.N.Y. 1990).

Second, and more importantly, the Lease contained a powerful right of first refusal, purporting to give Mr. W the option to purchase the Property if Electro decided to sell it. For a regular debtor in the business of leasing commercial property, the inclusion of a right of first refusal would appear to fall well outside the normal expectations of Electro's hypothetical

creditors.[4] A hypothetical creditor might well expect that Electro would renew a lease with an existing tenant on the same or substantially similar terms. A hypothetical creditor would not, however, expect Electro to enter a potential ten-year lease with a right of first refusal (that, if exercised, would sell off one of Electro's two properties) without notice and a hearing.

Moreover, to protect all constituencies in a case, the Bankruptcy Code reserves to this Court the duty to determine the best buyer for any estate property. § 363(b). Electro's placement of a right of first refusal provision in the Lease purports to eliminate that important judicial duty. Given the statutory importance of that duty to the protection of all constituencies, the Court questions if any lease with a right of first refusal could ever be entered in the ordinary course of business in the bankruptcy context. The Court, however, need not decide today whether to broadly foreclose "ordinary course" qualification for all leases with rights of first refusal. It is enough for today that the Lease does not pass the vertical test because the Court lacks evidence of similar rights of first refusal in Electro's other or past leases.

The Court thus holds that the Lease fails the "vertical" test under § 363(c)(1).

### 2. HORIZONTAL TEST – THE LEASE TRANSACTION

Mr. W failed to present evidence of practices typical in the commercial property leasing industry, such as lease terms, payment amounts, purchase options, rights of first refusal, or noncompete clauses. With no evidence, the Court cannot hold that Mr. W has met its burden of showing that the terms of the Lease fell within the range of terms typical in that industry. *See **Moore v. Brewer (In re HMH Motor Servs.)**, 259 B.R. 440, 449 (Bankr. S.D. Ga. 2000) (holding that an equipment lease failed the horizontal test because no evidence of the typical terms of leases in that industry was presented).

---

[4] Had Mr. W offered evidence that it had entered other leases with a right of first refusal, the Court might have considered such inclusion within the scope of the Debtor's regular business practices.

9

The Court thus holds that the Lease fails the "horizontal" test under § 363(c)(1) and was entered outside the ordinary course of Electro's business. Electro needed to seek the Court's permission before entering the Lease; because no approval was sought or granted, the Lease is either void or voidable.

### ii. MR. W SALE CONTRACT

#### 1. VERTICAL TEST – MR. W SALE CONTRACT

Although it was in the business of leasing commercial properties, Electro owned only two—one at 3941 Eisenhower and the Property. The Court received no evidence that Electro's prior business practices involved the sale of real estate, and as such the Mr. W Sale Contract would appear to fall outside the expectations of Electro's hypothetical creditors. A hypothetical creditor dealing with Electro might reasonably expect that Electro would renew a lease with an existing tenant on the same or substantially similar terms. But "some post-petition transactions, either by their size or nature, are not within the day-to-day operations of a business and are, therefore, extraordinary." *In re Baker*, 118 B.R. at 29. The Mr. W Sale Contract was extraordinary, both in size (it proposed to sell one of Electro's two properties, constituting almost 30% of the value of Electro's assets) and in nature (it is a sale, not a lease), making it a transaction for which creditors would expect notice and a hearing.

The Court thus holds that the Mr. W Sale Contract fails the "vertical" test under § 363(c)(1).

#### 2. HORIZONTAL TEST – MR. W SALE CONTRACT

The sale of real property falls outside the scope of typical business practices in the commercial property leasing industry. Mr. W did not carry its burden to establish otherwise. Mr. W presented no evidence on whether sales of real property are typical in the commercial property leasing industry, and, even if it had, the sale of such a significant portion of Electro's assets would

not appear to fall within the ordinary course of business because "the transfer of a primary asset of the debtor is not a routine, ordinary course of business matter, and compliance with notice and hearing requirements of § 363 is mandatory." *In re Selgar Realty Corp.*, 85 B.R. 235, 240 (Bankr. E.D.N.Y. 1988). Because "it is not in the ordinary course to engage in one's own liquidation," the Court holds that the Mr. W Sale Contract fails the "horizontal" test under § 363(c)(1). *Id*.

The Court finds that the Mr. W Sale Contract was outside the ordinary course of Electro's business and required this Court's approval. Because no such approval was sought or granted, the Mr. W Sale Contract is either void or voidable. If void, the inquiry ends here because Mr. W never received a property interest from Electro. Mr. W, however, contends that the Mr. W Sale Contract is voidable and asserts that any property interest it received in that transaction is protected from avoidance under § 549(c). Although the Court declines to take a position on the void/voidable distinction, it will address Mr. W's § 549(c) argument.

### d. SECTION 549(C)

Under § 549(a), a trustee or chapter 11 debtor-in-possession may generally avoid an unauthorized post-petition transfer of estate property. Section 549(c) provides an exception to this avoidance power for a (i) transfer of an interest in real property (ii) to a good faith purchaser without knowledge of the bankruptcy case for "present fair equivalent value," and (iii) the transaction was recorded before notice of the bankruptcy filing was recorded in the real property records.

Mr. W argues that, even if the Mr. W Sale Contract were entered in violation of § 363(c)(1) and voidable under § 549(a), Electro's post-petition transfer of a real property interest to it cannot be set aside because it falls under § 549(c)'s exception. This argument fails where (i) no transfer occurred because the transaction was void, or (ii) Mr. W was not a good faith purchaser. Again,

11

whether the Lease and Mr. W Sale Contract are void or voidable is largely immaterial to the outcome here, except as to the mechanics of effectuating the relief.

Assuming the Mr. W Sale Contract is voidable under § 549(a), Mr. W contends that the Mr. W Sale Contract cannot be set aside because it falls within § 549(c)'s exception. The Court disagrees.

### i. TRANSFER OF AN INTEREST IN REAL PROPERTY

Section 549(c) first requires a showing of a transfer of an interest in real property. Section 101(54) defines a "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property."

If the purported transfer was *void*, then no transfer of a real property interest ever took place. **Mestena, Inc. v. Atravasada Land & Cattle Co. (In re Atravasada Land & Cattle Inc.)**, 388 B.R. 255, 268 (Bankr. S.D. Tex. 2008) ("An attempt to transfer real property in the State of Texas in violation of the automatic stay is void, not voidable."). Because it entered a transaction outside the ordinary course of business without court permission, Electro lacked the authority to transfer title to the Property. The Mr. W Sale Contract could thus be considered void. Without a transfer, the § 549(c) defense fails, and the inquiry ends here.

Assuming that the Mr. W Sale Contract was instead voidable, the inquiry continues. When Electro and Mr. W signed the Mr. W Sale Contract in March 2022, an equitable interest in the Property was purportedly transferred to Mr. W. *See* **Haynes v. Molina**, 2021 Tex. App. LEXIS 7564, *17 (Tex. App—Houston [1st Dist.] Sept. 14, 2021) (buyer under a contract for deed has an equitable right in the property to be sold). The transfer of that equitable property interest satisfies this element of § 549(c).

12

ii. GOOD FAITH PURCHASER FOR PRESENT FAIR EQUIVALENT VALUE

Section 549(c) next requires that Mr. W be a "good faith purchaser without knowledge of the commencement of the case." A purchase is made in good faith if the transferee has no actual knowledge *or constructive notice* of the bankruptcy, and the transaction "carries the earmarks of an arms-length bargain" (i.e., the purchaser paid present fair equivalent value). ***Morton v. Kievit (In re Vallecito Gas, LLC)***, 461 B.R. 358, 405 (Bankr. N.D. Tex. 2011) (holding that "knowledge of the commencement of the case" includes constructive notice).

Mr. W raises the affirmative defense that it is a BFP, which, if true, would satisfy this element and protect its hypothetical purchase of the Property under the Mr. W Sale Contract. The Court holds that Mr. W is not a BFP of the Property.

The evidence before the Court does not establish that Mr. W ever had actual knowledge of Electro's bankruptcy. Although Alamo emailed the Property's tax certificate to several representatives of Mr. W, no evidence explicitly shows that Mr. W's representatives had actual knowledge of Electro's bankruptcy.

The Court, however, finds that Mr. W had constructive notice[5] of the bankruptcy. Mr. W had constructive notice of the bankruptcy if it knew of facts "sufficient to cause a prudent person to inquire whether the seller [had] filed a bankruptcy case." ***In re Vallecito Gas, LLC***, 461 B.R. at 407 (citing ***In re Housey***, 409 B.R. 611, 623 (Bankr. D. Mass. 2009)).

The first page of the tax certificate for the Property attached to Alamo's March 16 email to Mr. W's attorney and representatives contained this notice: "Important Bankruptcy Notice. This certificate reflects bankruptcy information on one or more accounts." Def.'s Ex. 11, at 17. On

---

[5] Although sometimes used interchangeably in the case law, the Court acknowledges that "notice" and "knowledge" are not the same thing, although the two concepts may overlap. Tex. Bus. Comm. Code § 1.202. For purposes of this Opinion the Court finds Mr. W had constructive notice of Electro's bankruptcy case, which disqualifies it from being a good faith purchaser under § 549(c). ***In re Vallecito Gas, LLC***, 461 B.R. at 405.

13

every subsequent page except the last, the words "Bankruptcy Case #BANKRUPTCY Filed" are printed in red, 12-point font under the Property's individual tax obligations, appearing six times. Def.'s Ex. 11, at 18-20.

The repeated indications of a bankruptcy filing associated with the Property in the tax certificate, transmitted to three of Mr. W's representatives, including Mr. W's attorney, would have prompted a reasonable person to ask whether Electro had filed bankruptcy. *See **McCord v. Agard (In re Bean)**,* 252 F.2d 113, 116 (2d. Cir. 2001) (purchaser had constructive notice of a bankruptcy case through his attorney, who obtained a title report indicating the seller's pending bankruptcy case at closing).

Additionally, as Mr. W's escrow agent, Alamo's knowledge of the bankruptcy is imputed to Mr. W. ***Harydzak v. New Horizon, LLC***, 406 B.R. 499, 514 (Bankr. S.D. Tex. 2009) (finding that a bank had actual knowledge of a transaction after the knowledge of its escrow agent, Alamo Title, was imputed to it). Alamo knew about the bankruptcy before the scheduled closing date. Joe Gimblet stated that although he learned of Electro's bankruptcy, he did not intend to deal with the bankruptcy until before closing. Def.'s Ex. 27, at 77. He also stated that at least one other escrow agent at Alamo also knew of Electro's bankruptcy before the scheduled closing. Def.'s Ex. 27, at 78.

The Court thus finds that Mr. W had constructive notice of the bankruptcy and is disqualified as a good faith purchaser of the Property even if the transfer were voidable. The Court need not reach the issue of present fair equivalent value.

### iii. INTEREST PERFECTED PRIOR TO PETITION DATE

Section 549(c) requires a showing that Mr. W perfected (via recordation in the real property records) any real property interest it acquired in the Property before a copy or notice of the bankruptcy petition was recorded in those same records.

Mr. W alleges that the bankruptcy petition was never recorded in the Bexar County real property records. No admitted evidence shows if, or when, the bankruptcy petition was filed in the real property records. This element of § 549(c) *also* requires that Mr. W perfect its own interest in the Property. No admitted evidence shows Mr. W perfected its purported interest in the Property. Thus, the Court lacks evidence to determine this element.

The Court holds that § 549(c) does not protect the Mr. W Sale Contract from avoidance under § 549(a) because Mr. W (i) is not a good faith purchaser and (ii) failed to meet its evidentiary burden as to the perfection requirement.

### e. BREACH OF CONTRACT AND SPECIFIC PERFORMANCE OF THE MR. W SALE CONTRACT

Mr. W argues that Electro breached the Mr. W Sale Contract by failing to convey the Property to Mr. W, and Mr. W requests specific performance of the Mr. W. Sale Contract. Having found that the Mr. W Sale Contract was entered without court authority and was thus either void or voidable under § 549(a), the Court will grant summary judgment for Pinn Road on this issue. Although the Court will deny Mr. W's request for specific performance against Electro, nothing in this Opinion prevents Mr. W from seeking to recover damages from Electro or Merchant personally for Merchant's actions outside the ordinary course of Electro's business.

### f. QUIET TITLE

Mr. W argues that it has an interest in the Property and sues to quiet title. Having found that the Mr. W Sale Contract was entered without court authority and was thus either void or

15

voidable under § 549(a), the Court finds that Mr. W does not have a real property interest in the Property and will grant summary judgment for Pinn Road on this issue.

g. REVOCATION OF CONFIRMATION

Finally, Mr. W argues that confirmation of the Second Amended Plan should be revoked under § 1144 as procured by fraud. Mr. W asserts that revocation would not harm innocent creditors, either because none objected to Mr. W's motion seeking revocation or because Mr. W would consummate the sale under the Mr. W Sale Contract, leaving creditors in the same position as they are with Pinn Road's sale consummation. Pinn Road responds that a finding that the Lease and Mr. W Sale Contract were not executed in the ordinary course of Electro's business obviates any need to revoke confirmation.

A court may revoke a confirmation "order if and only if such order *was procured by fraud*." § 1144 (emphasis added). The fraud on the court contemplated by § 1144 requires a showing that:

1. the debtor made a representation regarding compliance with section 1129 of the Bankruptcy Code that was materially false;
2. the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;
3. the representation was made to induce the court to rely on it;
4. the court did rely on it; and
5. as a consequence of such reliance, the court entered the confirmation order.

*Sherwin Pipeline, Inc. v. Sherwin Alumina Co., LLC*, 952 F.3d 229, 235 (5th Cir. 2020).

The Court may not revoke a confirmed plan *unless* the revocation order would protect parties that acquired rights in good faith under the plan. § 1144(1). This requirement is consistent with the doctrine of equitable mootness, which provides that the Court should not attempt to "unscramble the egg" after a plan has been substantially consummated. *In re Celsius Network LLC*, 2024 Bankr. LEXIS 1386, *1, *14 (Bankr. S.D.N.Y. 2024). Here, although the Court finds

that Electro fraudulently procured confirmation of its Second Amended Plan, the Court declines to revoke its confirmation order and grants summary judgment to Pinn Road on this claim.

### i. FRAUD ON THE COURT

Electro failed to list important assets (the Lease and Mr. W Sale Contract) in both its Schedules and Second Amended Plan. Electro also made the materially false statement that "[the] only executory contract or unexpired lease [Electro] has is with Attaur Rehman, who is leasing the property at 3539 Eisenhauer Road, San Antonio, Texas." (collectively "**Misrepresentations**"). Second Amended Plan, sec. 8.01.

These Misrepresentations were important to the satisfaction of § 1129's confirmation requirements. The Court finds Merchant and Electro knew, or had reckless disregard for, the falsity of these Misrepresentations and that Electro intended to induce the Court's reliance on the Misrepresentations by using them in relation to confirmation of its Second Amended Plan, and that the Court confirmed the Second Amended Plan relying on the Misrepresentations.

The Court thus finds that confirmation of Electro's Second Amended Plan was fraudulently procured. This, however, does not end the inquiry. Revocation under § 1144 is discretionary. *In re Celsius Network, LLC*, 2024 Bankr. LEXIS 1386 at *11. But the Court is *prohibited* from revoking a confirmed plan if it cannot meet § 1144(1)'s requirement that innocent parties to the plan are protected. *Id.*

### ii. PROTECTION OF INNOCENT CREDITORS

Mr. W argues that "no party has appeared and alleged that they would be harmed by plan revocation."[6] Mr. W's MSJ at 7. While it is true that no party (except Pinn Road) has objected,

---

[6] Mr. W curiously argues that it is "excused from complying with the Plan as a matter of law" because it was not notified of the Second Amended Plan. The Court struggles to understand why a lack of notice of the Second Amended Plan has any bearing on the protection of innocent creditors from the effect of confirmation revocation. While an entity's failure to receive notice of a plan may limit the effect of the confirmed plan on the entity, that does not mean

17

that does not mean that no party will be harmed. Here, specific creditors will be harmed by revocation of the confirmation order. The admitted evidence suggests that Tibor Ritter, San Pedro Real Estate and Bexar County acquired their rights under the Second Amended Plan in good faith and could be harmed by the Court's revocation of the Second Amended Plan. With such evidence, the Court will not revoke the plan, potentially reversing payments made over two years ago, just to "[place] the parties in the status quo pre-confirmation." ***In re Berryman Prods.***, 159 F.3d 941, 946 (5th Cir. 1998).

Mr. W also argues that all good faith parties to the Second Amended Plan would be protected if the Second Amended Plan were revoked and the Court orders specific performance of the Mr. W Sale Contract because Mr. W would consummate the sale of the Property, thus leaving all creditors in the same position as they are now. The Court disagrees for three reasons: first, the Mr. W Sale Contract provides for a purchase price $50,000 lower than what Electro received from Pinn Road. Second, the Court, in finding that the Mr. W Sale Contract was not entered in the ordinary course of business, also declines to grant Mr. W the specific performance it needs to carry out its proposed protections. Third, Mr. W forgets that the Second Amended Plan encompasses more than just the Property and Pinn Road. The Second Amended Plan also provided for the sale of Electro's other property and payments to secured creditors such as Tibor Ritter, San Pedro Real Estate, and Bexar County.

Concern for the effect of plan revocation on these other creditors leads the Court to also consider the related doctrine of equitable mootness. "The primary consideration in determining

---

the entity is fully protected from the effects of the plan. Here, payments were made and property was transferred. Confirmation revocation doesn't put the toothpaste back in the tube. A plan that transfers property and makes payments necessarily affects all creditors, whether they had notice of the plan or not. That Mr. W. had some notice of Electro's bankruptcy case via the Alamo Title tax certificates also undermines any "clean hands" argument Mr. W may be asserting. Finally, even if Mr. W was not bound by the Second Amended Plan, which promised Mr. W nothing and imposed no obligations on Mr. W, that would not entitle Mr. W to the Property or revocation of the confirmation order.

mootness is whether the plan has been substantially consummated." *In re Delta Air Lines, Inc.*, 386 B.R. 518, 537 (Bankr. S.D.N.Y. 2008).

The only two properties involved in the Second Amended Plan have long been sold and the proceeds distributed, suggesting the Second Amended Plan has been substantially consummated. § 1101(2). Additionally, Mr. W failed to seek a stay to prevent execution of the Second Amended Plan, which would have prevented substantial consummation and cut off any equitable mootness argument. *In re Berryman Prods.*, 159 F.3d at 945. For these reasons, the Court finds revocation inappropriate and Mr. W's request equitably moot.

The Court grants summary judgment for Pinn Road on the issue of plan revocation under § 1144.

V. **CONCLUSION**

For the reasons stated above, the Court will grant Pinn Road's Motion for Summary Judgment and deny Mr. W's Motion for Summary Judgment. It is, therefore,

**ORDERED** that *Defendant 2317 Pinn Road Investment Inc. and Shebilo Management Inc Motion for Summary Judgment* (ECF No. 204) is hereby **GRANTED**. It is further

**ORDERED** that *Plaintiff Mr. W Fireworks, Inc.'s Motion for Summary Judgment* (ECF No. 202) is **DENIED**.

# # #