**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 28, 2025**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELECTRO SALES & SERVICE, INC., | § | CASE NO. 21-50546-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| MR. W FIREWORKS, INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADVERSARY NO. 22-05045-MMP |
| | § | |
| 2317 PINN ROAD INVESTMENT INC., SHEBILO MANAGEMENT, INC. & ELECTRO SALES & SERVICE, INC., | § | |
| | § | |
| DEFENDANTS. | § | |

### ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUPPLEMENTAL ORDER AND OPINION ON MOTIONS FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

Before the Court is *Plaintiff Mr. W Fireworks, Inc.'s Motion for Reconsideration Pursuant to FRCP 54(B)* (ECF No. 218; "**Motion**"). After considering Plaintiff's *Motion*, *Defendants 2317 Pinn Road Investment Inc. and Shebilo Management Inc.'s Response to Plaintiff's Motion for Reconsideration* (ECF No. 221), and conducting a hearing on the matter on September 9, 2024, the Court has determined the *Motion* should be granted.

After reconsidering the parties' summary judgment motions (ECF Nos. 202, 204, 218) and responses (ECF Nos. 212, 213, 214, 221), the Court issues this Supplemental Order and Opinion on Motions for Summary Judgment ("**Supplemental Opinion**") granting summary judgment to Pinn Road Investments Inc. ("**Pinn Road**").

**II.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b).[1] Venue is proper under 28 U.S.C. § 1409 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (M), and (N). This Supplemental Opinion serves as this Court's supplemental findings of fact and conclusions of law. FED. R. BANKR. P. 7052, 9014.

**III.   FACTUAL BACKGROUND**

The Court adopts, and will not repeat, its findings of fact in its *Order and Opinion on Motions for Summary Judgment* ("**Order and Opinion**"), ECF No. 216, pp. 2–5, which this Supplemental Opinion supplements. To illustrate the order of events between Electro Sales, Inc. ("**Electro**"), Mr. W. Fireworks, Inc. ("**Mr. W**") and their contracts: the lease contract ("**Mr. W**

---

[1] All statutory citations and references are to title 11 of the United States Code, unless otherwise noted.

**Lease Contract**") and the sales contract ("**Mr. W Sales Contract**") both concerning 2750 S. Loop 1604, San Antonio, Texas ("**Property**"), the Court has created a not-to-scale timeline below. ECF No. 216, p. 12; ECF No. 204, Ex. 11, pp. 1, 17; ECF No. 202, Ex. A-1, p. 2.



### IV. ANALYSIS
#### a. MOTION FOR RECONSIDERATION
##### i. MOTION FOR RECONSIDERATION STANDARD

The *Motion* relies on Rule 54(b),[2] which states, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b), made applicable via FED. R. BANKR. P. 7054. Rule 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the trial court to 'revise at any time any order or other decision that does not end the action.'" ***Engelhart v. Nguyen (In re 1960 Fam.***

---

[2] All citations and references to procedural rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

*Prac., P.A.)*, Case No. 20-35493, Adv. No. 21-3906, 2023 WL 2393810, at *4 (Bankr. S.D. Tex. Mar. 7, 2023) (quoting *Austin v. Kroger, Texas L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). An interlocutory order is one which "resolv[es] fewer than all of the claims presented." *Enviro-Lite Sols., Inc. v. Edinburg Consol. ISD (In re USA Promlite Tech. Inc.)*, Case No. 18-36893, Adv. No. 19-7003, 2022 Bankr. LEXIS 2988, at *10 (Bankr. S.D. Tex. Oct. 20, 2022); *Stewart v. Kutner (In re Kutner)*, 656 F.2d 1107, 1110–11 (5th Cir. 1981).

"Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient.'" *Austin*, 864 F.3d at 336; *CERx Pharm. Partners, LP v. Provider Meds, LP (In re ProvideRx of Grapevine, LLC)*, 507 B.R. 132, 142 (Bankr. N.D. Tex. 2014). Rule 54(b) offers a more flexible approach and allows courts to consider new arguments. *1960 Fam. Prac.*, 2023 WL 2393810, at *4; *KSMI Prop., LLC v. South (In re South)*, 647 B.R. 535, 537 n.2 (Bankr. E.D. Tex. 2023); *Lee v. Choudhri (In re Briar Bldg. Houston, LLC)*, 645 B.R. 896, 903 (Bankr. S.D. Tex. 2022); *ProvideRx of Grapevine*, 507 B.R. at 142.

### ii. THE COURT'S ORDER AND OPINION (ECF NO. 216)

Mr. W contends the Court's *Order and Opinion* is an interlocutory order and can therefore be revised under Rule 54(b). ECF No. 218, pp. 2–3. Mr. W asserts: "the Court did not address whether Mr. W established a defense under Section 549(c) as to the Lease Agreement." ECF No. 218, p. 2. Pinn Road replies: "the court's Order and Opinion on Motions for Summary Judgment (Doc 216) adjudicated all issues in the case." ECF No. 221, p. 3.

The Court's *Order and Opinion* found Mr. W's Lease Contract was executed outside Electro's ordinary course of business, and therefore void or voidable. ECF No. 216, pp. 9–10 ("Electro needed to seek the Court's permission before entering the Lease; because no approval was sought or granted, the Lease is either void or voidable."). From there, the Court's § 549

4

discussion mainly addressed the Mr. W Sales Contract, stating Mr. W (i) was not a good faith purchaser because it was on notice of Electro's bankruptcy[3] prior to the proposed closing date,[4] and (ii) failed to meet its evidentiary burden as to its perfection requirement.[5] ECF No. 216, pp. 11–15. But in that same § 549 discussion, only once did the Court's *Order and Opinion* explicitly mention the Mr. W Lease Contract.

---

[3] Although acknowledging the Court's finding that Mr. W had constructive notice, Mr. W argues "[t]he Order did not contain a finding that Mr. W had any notice at the time it executed the Sales Contract." ECF No. 218 ¶ 17. The Court addressed this matter on pages 13 and 14 of its *Order and Opinion*. To reiterate: Mr. W's title company had notice before the proposed closing date, as early as March 7, 2022, that Electro was in bankruptcy. ECF No. 204, Ex. 11, p. 17. The title company passed that knowledge onto Mr. W on March 16, over two months before the proposed closing date. *Id.*, Ex. 11, p. 1. Constructive notice is notice. ***Sommers v. Sandcastle Homes, Inc.***, 521 S.W.3d 749, 759 (Tex. 2017) (Lehrmann, J. concurring). By receiving the title report with "Bankruptcy Case #BANKRUPTCY Filed" conspicuously placed on many pages of the Tax Certificate Update, Mr. W had sufficient facts that would lead a reasonable person to question whether Electro was in bankruptcy. ***Morton v. Kievit (In re Vallecito Gas, LLC)***, 461 B.R. 358, 406–07 (Bankr. N.D. Tex. 2011). Therefore, Mr. W was on notice. And if that was not enough, constructive notice of Electro's bankruptcy was imputed onto Mr. W because Mr. W's agent, the title company it hired, knew of the bankruptcy. ***McCord v. Agard (In re Bean)***, 252 F.3d 113, 116 (2d Cir. 2001); ***Harydzak v. New Horizon, LLC***, 406 B.R. 499, 514 (Bankr. S.D. Tex. 2009).

[4] Mr. W rightly points out that the Court's *Order and Opinion* suggested that an equitable interest was transferred once the Mr. W Sales Contract was executed. ECF No. 216, p. 12. Upon reconsideration, however, the Court finds an *equitable interest* was not transferred when Electro and Mr. W signed the Mr. W Sales Contract. Instead, only an *equitable right* was transferred. The bankruptcy code's definition of transfer is limited to interests in property (§ 101(54)); and Texas law has long held that upon execution of a land sale contract, the buyer only has an *equitable right* in the property. ***Johnson v. Wood***, 157 S.W.2d 146, 148 (Tex. [Comm'n App.] 1941); ***In re Garza***, 462 B.R. 638, 641 (Bankr. N.D. Tex. 2011); ***S. Vanguard Ins. Co. v. Silberstein***, Case No. 14-09-00472, 2010 WL 2998786, at *4 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010); ***In re Waldron***, 65 B.R. 169, 173 (Bankr. N.D. Tex. 1986). An equitable interest in the property does not vest in the buyer until the buyer has performed all of their obligations under the land sale contract—such as paying the purchase price. ***Johnson***, 157 S.W.2d at 148; ***Waldron***, 65 B.R. at 173; ***DeLoach v. Stelly***, Case No. 01-19-00182, 2023 WL 5280749, at *4 (Tex. App.—Houston [1st Dist.] Aug. 17, 2023). Therefore, Mr. W did not hold an equitable interest in the Property after execution of the Mr. W Sales Contract.

[5] Mr. W says the parties stipulated there was no evidence the bankruptcy petition was filed in the real property records. ECF No. 218 ¶ 18. The parties agreed "[n]either a copy nor notice of the petition was filed in the Official Public Records of Bexar County, Texas." ECF No. 210 ¶ 38. But this stipulated fact does not address what Mr. W did to perfect its own purported interest in the property as required by § 549(c). ***Domino Mgmt., Inc. v. Konowitz (In re Konowitz)***, 905 F.2d 55, 59 (4th Cir. 1990); ***Walker v. California Mortg. Serv. (In re Walker)***, 861 F.2d 597, 600 (9th Cir. 1988); ***In re Ward***, 837 F.2d 124, 127 (2d Cir. 1988). Notwithstanding the Court's conclusion that Mr. W did not have an equitable interest, but only an equitable right, even if Mr. W had an equitable interest, Mr. W did not perfect that equitable interest. Mr. W argues it did not need to record its interest to perfect it. ECF No. 218 ¶¶ 18–22. But the authorities it cites to support this proposition say nothing of *perfecting* an equitable interest, ***Glenn v. Lucas***, 376 S.W.3d 268, 275 (Tex. App.—Texarkana 2012) and ***Hitchcock Prop., Inc. v. Levering***, 776 S.W.2d 236, 238 (Tex. App.—Houston [1st Dist.] 1989), but only speak to the *validity* of an equitable interest. Not only do these cases not support the proposition Mr. W says they do, they are inapposite as to the issue Mr. W raises. The Court believes a party perfects an equitable interest in real property like any other interest in real property, by filing notice of such interest with the proper county records office. TEX. PROP. CODE §§ 13.001, 13.002.

5

Because the Court's *Order and Opinion* did not explicitly resolve Mr. W's defense under § 549 as to the Mr. W Lease Contract, it is an interlocutory order. Thus, this Court will grant Mr. W's *Motion to Reconsider* the Court's *Order and Opinion*.

    **b.**    **MOTIONS FOR SUMMARY JUDGMENT**
          **i.**    **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ***Alabama v. North Carolina***, 560 U.S. 330, 344 (2010) (quoting Rule 56(c) and citing ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986)).

          **ii.**    **THE PARTIES' ARGUMENTS**

Combined with the Court's interlocutory *Order and Opinion*, this Supplemental Opinion provides the final judgment for all claims raised by the parties' summary judgment motions, specifically addressing whether Mr. W's Lease Contract is protected because Mr. W is allegedly a bona-fide purchaser under § 549(c). In the *Order and Opinion*, the Court found Mr. W's Lease Contract was entered outside the ordinary course of business. ECF No. 216, pp. 7–10. Thus, Mr. W's Lease Contract is void or voidable. *See* ECF No. 216 pp. 6–7, 10. The question this Supplemental Opinion answers is whether Mr. W's Lease Contract is void or can be avoided under § 549(a).

Mr. W argues "[p]ost-petition transactions are voidable, not void." ECF No. 202, p. 10. But Pinn Road believes "[b]ecause the lease agreement and sales contract were outside the ordinary course of business, they are void and cannot be cured." ECF No. 221, p. 9. Pinn Road asserts unapproved, post-petition contracts entered outside the debtor's ordinary course of business are unenforceable. ECF No. 221, p. 5.

If Mr. W is correct and § 363(b) violations are only voidable, then § 549(a) allows a trustee to avoid unauthorized transfers and § 549(c) provides defenses to any such avoidance action, for

which Mr. W claims it qualifies. However, if Pinn Road is correct and § 363(b) violations are void, no transfer of a property interest to Mr. W occurred and Mr. W's § 549(c) defenses are irrelevant. The Court agrees with Pinn Road that debtor-initiated, post-petition transfers outside the debtor's ordinary course of business without the Court's approval in violation of § 363(b) are void, not voidable.

### iii. SECTION 363(b) VIOLATIONS ARE VOID, NOT VOIDABLE

Section 363(b)(1) says: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In a chapter 11 case, the debtor remains in possession of property of the estate and takes on all the rights, duties, and powers of a trustee. § 1107.

Thus, if a debtor-in-possession ("**DIP**") seeks to sell or lease property of the estate in the ordinary course of business, it does not need court approval. § 363(c)(1); *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1225–26 (5th Cir. 1986). But if the DIP seeks to sell or lease property of the estate outside the ordinary course of business, it must first obtain the Court's approval. § 363(b); *Cont'l Air Lines*, 780 F.2d at 1225–26; *In re CDX Gas, LLC*, Case No. 08-37922, 2009 WL 1651445, at *2 (Bankr. S.D. Tex. June 9, 2009) (a "[s]ale outside the ordinary course of business is governed by Section 363(b)."). A DIP's failure to obtain court approval before selling property of the estate outside the ordinary course results in a transfer of estate property that violates § 363(b). *See In re Patriot Place, Ltd.*, 486 B.R. 773, 792–93 (Bankr. W.D. Tex. 2013) (Mott, J.) (ruling a debtor's notice of termination of lease *void* and ineffective as not in the ordinary course of business); *Zeman v. Humphreys (In re Zeman)*, Case No. 09-52559, Adv. No. 09-05081, 2011 WL 1042568, at *5 (Bankr. W.D. Tex. Mar. 16, 2011) (Clark, J.) (ruling a debtor's execution of a release *voidable*

7

under § 549 and because the debtor failed to challenge the release within the applicable time period, the release was treated as valid).

Section 549(a) states: "Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case; and that is not authorized under this title or by the court."  Consequently, a trustee may set aside an unauthorized post-petition transfer.  ***Herrington v. Grant (In re Paxton)***, 440 F.3d 233, 236 (5th Cir. 2006).

Courts are divided on whether post-petition transactions in violation of § 363(b) (outside the ordinary course) are void or voidable.  A line of cases in the Fifth Circuit holds that transactions made outside the ordinary course and without court permission are *void*[6] and considered to have never happened.  ***Patriot Place***, 486 B.R. at 793; ***In re Am. Rice, Inc.***, No. 98-21254, 2010 WL 8752393, at *11 (Bankr. S.D. Tex. Apr. 27, 2010).  A competing line of cases, however, holds that such transactions are instead *voidable.*  ***Zeman,*** 2011 WL 1042568, at *12 (holding that treating § 363(b) violations as *void* arguably makes § 549(a)(2)(B) redundant); ***Norman v. Havis***, Civ. No. H-07-1035, Case No. 06-30414, Adv. No. 06-3581, 2007 WL 2288045, at *2 (S.D. Tex. Aug. 6, 2007) (affirming bankruptcy court's § 549(a) order avoiding an unauthorized, postpetition transfer of debtor's property); *see* ***Starns v. Avent***, 96 B.R. 620, 632 (M.D. La. 1989) ("A sale under section 363(b) that fails to comply with the notice or hearing requirements of the statute and the applicable bankruptcy rules is invalid and may be set aside on appeal.  But it is not void.").

The Fifth Circuit, however, has yet to take a stance on the void/voidable distinction as it pertains to § 363(b) violations—debtor-initiated transfers outside the ordinary course of business.

---

[6] Cases also use the term "unenforceable" which the Court equates to "void." ***Northview Motors, Inc. v. Chrysler Motors Corp.***, 186 F.3d 346, 351 (3d Cir. 1999); ***In re Lavigne***, 183 B.R. 65, 71 (Bankr. S.D.N.Y. 1995, *aff'd* ***Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)***, 114 F.3d 379 (2d. Cir. 1997).

Two bankruptcy judges in the Western District of Texas have come out on different sides of this question. Judge Clark in *Zeman* said that unauthorized, post-petition, debtor-initiated transfers are voidable. *Zeman*, 2011 WL 1042568, at 5. But two years later Judge Mott in *Patriot Place* said a debtor's unauthorized, post-petition transfer is "unenforceable, ineffective, and void." *Patriot Place*, 486 B.R. at 793. That *Zeman* was a chapter 13 case, with a trustee present, and *Patriot Place* was a chapter 11 case, without a trustee, might have had some influence on the outcomes of those decisions.

### 1. COMPARING VOID V. VOIDABLE IN § 362 VIOLATIONS

In a parallel, but not entirely analogous situation, the Fifth Circuit recognizes § 549(a) allows a trustee to avoid automatic stay violations under § 362, but such actions are not automatically void. *Sikes v. Global Marine, Inc*, 881 F.2d 176 (5th Cir. 1989); *Paxton*, 440 F.3d at 237; *Omrazeti v. Aurora Bank FSB*, Civ. No. 12-CV-00730, 2013 WL 3242520, at *5 (W.D. Tex. June 25, 2013) ("[T]he Fifth Circuit has consistently held that actions taken in violation of the automatic stay are voidable rather than void."). The *Sikes* court rested much of its decision on the fact that Congress granted courts the power to *annul* the automatic stay within § 362. *Id.* at 178–79. The power to annul is a retroactive power a court can take to cure what would otherwise be a violation of the automatic stay. *Id.* at 178 ("The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay."). For this reason, the Fifth Circuit held § 362 violations can be retroactively avoided or cured. *Id.* at 179–80. As such, the violations are voidable, not void. *Id.*; *see also Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412 (5th Cir. 1995) ("It is well-settled that actions taken in violation of the automatic stay are not void, but rather they are merely voidable, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d).") (internal quotations omitted).

9

Whereas § 362 grants the power to retroactively validate unauthorized actions, § 363 only grants the power to proactively approve actions that would otherwise be unauthorized. *See Sikes*, 881 F.2d at 178–79 ("The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay."); ***Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (Matter of VCR I, L.L.C.)***, 922 F.3d 323, 327 (5th Cir. 2019) ("[W]hen a settlement agreement in a bankruptcy proceeding involves the sale of the debtor's property, such agreement triggers the requirements of § 363. Specifically, . . . court approval."). Before a DIP may take an action outside the ordinary course of business, it must first receive the court's approval. ***VCR I***, 922 F.3d at 327. A court is not authorized to retroactively validate an action a DIP took outside the ordinary course of business. Such validation would amount to a fictitious nunc pro tunc order. *See **Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano***, 589 U.S. 57, 65 (2020) ("Put plainly, the court 'cannot make the record what it is not.'") (quoting ***Missouri v. Jenkins***, 495 U.S. 33, 49 (1990)). This absence of retroactive authority within § 363(b) makes it different from § 362.[7] Thus, it makes sense that Congress would treat the two scenarios differently. One is voidable or curable (§ 362). The other is void (§ 363).

Section 363(b) provides guardrails in recognition of a DIP's power to operate its business in the ordinary course to avoid debtor malfeasance in the exercise of those estate duties outside the oversight of a trustee. ***In re Roth Am., Inc.***, 975 F.2d 949, 952 (3d Cir. 1992). It is a forward-looking statute. To use, sell, or lease estate property in a manner outside the debtor's ordinary

---

[7] In ***Kalb v. Feuerstein***, the Supreme Court found that a state court's judgment rendered in violation of the automatic stay was void. 308 U.S. 433, 438 (1940). This was because Congress intended to deprive a state court "of the power and jurisdiction to continue or maintain in any manner the foreclosure proceedings against appellants without the consent, after hearing, of the bankruptcy court in which the farmer's petition was then pending." *Id.* at 440. In 1940, § 362 only allowed courts to modify or terminate the automatic stay after a hearing. *Id.* It was not until after Congress amended § 362 that courts began to believe Congress's insertion of "annulling" changed this understanding to grant courts the power to not only proactively modify or terminate the automatic stay, but retroactively annul it. ***Sikes***, 881 F.2d at 179 n.2; ***In re Siciliano***, 13 F.3d 748, 751 (3d Cir. 1994); ***Easley v. Pettibone Michigan Corp.***, 990 F.2d 905, 910 (6th Cir. 1993); ***In re Albany Partners, Ltd.***, 749 F.2d 670, 675 (11th Cir. 1984).

course of business, a DIP must seek court approval. A DIP cannot use, sell, or lease estate property outside the ordinary course of business and then later ask a court for § 363(b) forgiveness ex post facto. *See **Am. Rice, Inc.***, 2010 WL 8752393, at *11 (finding a debtor's undisclosed and unapproved post-petition reaffirmation agreement void).

There is a basic difference between a scenario where a DIP seeks to avoid a transfer that violated § 362's automatic stay—typically aimed at creditors seeking to better the collectability of their debts—and one where the DIP seeks to avoid a transfer *it initiated* that was outside the ordinary course of business, violating § 363(b). A debtor seeking to undo creditor actions is fundamentally distinct from a debtor seeking to undo its own actions. In the first case, a debtor will readily seek to undo creditor actions to achieve equitable distribution to all creditors and recover assets for the estate. In the latter case, absent the appointment of a trustee through conversion or otherwise, parties in interest may never learn of a debtor's nefarious actions to benefit himself, and the debtor has no incentive to undo such actions. This difference may explain why Congress saw fit to make transfers in violation of § 362(a) subject to annulment and voidable, while making transfers in violation of § 363(b) void and incurable.

## 2. CONSEQUENCES OF VOIDABILITY

Because a DIP has all the powers of a trustee (§ 1107), a DIP could avoid unauthorized post-petition transfers. ***Farmers Branch v. Pointer (Matter of Pointer)***, 952 F.2d 82, 87–88 (5th Cir. 1992). Thus, a DIP could initiate a transfer of estate property that is outside the DIP's ordinary course of business without the court's approval, and then later that same DIP would have the power to avoid that same transfer. § 549(a). Or the DIP could exercise its discretion under § 549(a) and decide not to avoid its prior unauthorized transfer of estate property.

In a world where transfers which violate § 363(b) are only voidable and not void: unless a trustee is appointed, a creditors' committee is established, a *Louisiana World Exposition*[8] motion is granted, or a case is converted and a chapter 7 trustee is appointed, the only person who can choose to avoid an unauthorized transfer is the person who initiated the transfer. Congress's explicit restriction through § 363(b) on a DIP's use, sale, and lease of estate property to only what is in the debtor's ordinary course of business or under a court's prior approval serves as a guardrail to protect against DIP malfeasance. Concluding a § 363(b) violation is voidable (or curable) essentially removes that guardrail.

Only an appointed trustee, a chapter 7 trustee after conversion, and a creditor are incentivized to pursue an avoidance action. Principals controlling the DIP are financially disincentivized to avoid their own unauthorized transfer. Although the DIP may have all the same rights and duties as the trustee, they do not have the same incentives.

Interpreting § 363(b) violations as voidable would allow a DIP to transfer (secretly or openly) cash or assets to its principal and refuse to seek to avoid the transfer. Or, as what the Chapter 7 Trustee alleges occurred in this case, a DIP's principal could cause a DIP to secretly transfer an asset to a third party, and then abscond with the sales proceeds generated by the transfer,

---

[8] *In re Louisiana World Exposition* was a 1987 Fifth Circuit case that granted a creditors' committee derivative standing to challenge whether insurance proceeds were property of the corporate debtor's bankruptcy estate or for the benefit of the insured directors and officers of the corporate debtor. *Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1397–98 (5th Cir. 1987). This case has been used by creditors' committees, under the power granted by § 1103(c)(5), to step into the shoes of an otherwise unwilling trustee to perform an action in the interest of those creditors. *Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 92 (5th Cir. 2016); *Official Emp.-Related Issues Comm. of Enron Corp. v. Lavorato (In re Enron Corp.)*, 319 B.R. 128, 131 (Bankr. S.D. Tex. 2004); *In re E.F. Hutton Sw. Prop. II, Ltd.*, 103 B.R. 808, 813–14 (Bankr. N.D. Tex. 1989); *see also Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1442 (6th Cir. 1995) (granting a single creditor standing to bring an avoidance action under §§ 547 or 548). Arguably, because Pinn Road is not a creditor, it would not even be able to use a *Louisiana World Exposition* motion to challenge the Mr. W Lease Contract. *Kreit v. Quinn (In re Cleveland Imaging and Surgical Hosp., L.L.C.)*, 26 F.4th 285, 297 (5th Cir. 2002) (clarifying that only creditors' committees have derivative standing and that the DIP must unjustifiably refuse to pursue a course of action before a creditors' committee may seek court approval to challenge a transfer under § 549).

leaving the bankruptcy estate empty-handed—without the asset or its sales proceeds to show for it—and, importantly, no one to challenge the transfer (at least until the case is converted as it was here). Interpreting § 363(b) violations as voidable exposes the bankruptcy estate to the very harm that § 363(b) was intended to protect against—DIP malfeasance. This becomes most obvious when no trustee is ever appointed, or where a transfer occurs early in a case long before a trustee is appointed. Such as what is alleged to have occurred here.

While enjoying the benefits of the bankruptcy stay and keeping Electro's creditors at bay, Electro's principal is alleged to have, for his own personal gain and outside the view of Electro's creditors, leased Electro's property (and granted substantial other rights) outside Electro's ordinary course of business and without first seeking the Court's approval. The bankruptcy stay, which focuses mainly on the actions of creditors, did not prevent this lease transaction. Despite having fiduciary duties to the estate and its creditors as a DIP, Electro's principal had an incentive to enter the undisclosed lease transaction as it was lucrative for him personally. Indeed, scenarios where a DIP's principal, who is personally benefiting from a transaction, would want to avoid their own unauthorized transfer (on behalf of the DIP and in recognition of its duties to the estate) would be rare.

Because the Court lacks the authority to retroactively annul or approve a § 363(b) action and because of the inherent consequences of concluding otherwise, the Court concludes § 363(b) violations are void, not voidable. Because the Mr. W Lease Contract was outside Electro's ordinary course of business (ECF No. 216, pp. 8–9), in violation of § 363(b), the Mr. W Lease Contract is void. Because the Mr. W Lease Contract is void, it is incurable and no property interest was ever transferred to Mr. W. Because the Mr. W Lease contract is incurable, § 549(a)'s

avoidance power is unnecessary.  And since § 549(a) does not apply and since no interest was ever transferred to Mr. W, the Court need not consider Mr. W's § 549(c) exception arguments.

V.  **CONCLUSION**

For the reasons stated above, the Court will grant Mr. W's *Motion for Reconsideration*. Furthermore, the Court will grant Pinn Road's *Motion for Summary Judgment* and deny Mr. W's *Motion for Summary Judgment*.

The Court adopts all findings of fact and conclusions of law in its *Order and Opinion* that are not inconsistent with this Supplemental Opinion.  It is, therefore,

**ORDERED** that *Plaintiff Mr. W Fireworks, Inc.'s Motion for Reconsideration* (ECF No. 218) is **GRANTED.**  It is further

**ORDERED** that *Defendant 2317 Pinn Road Investment Inc. and Shebilo Management Inc Motion for Summary Judgment* (ECF No. 204) is **GRANTED**.  It is further

**ORDERED** that *Plaintiff Mr. W Fireworks, Inc.'s Motion for Summary Judgment* (ECF No. 202) is **DENIED**.

###